**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **Blue Water Importers, Inc.**<br>**A Michigan Corporation**<br>**2441 E. Bristol Road**<br>**Burton, Michigan 48529,**<br><br>　　**and**<br><br>**Deux Rives Chrysler Dodge**<br>　**Jeep Ram Inc.,**<br>**A Quebec Corporation**<br>**1810 Boulevard Fiset**<br>**Sorel-Tracy, Quebec J3P 5K4**<br>**Canada,**<br><br>　　**and**<br><br>**Scarsview Motors, Ltd.**<br>**An Ontario Corporation**<br>**951 Milner Avenue**<br>**Scarborough, Ontario M1B 5X4**<br>**Canada**<br><br>　　　**Plaintiffs,**<br><br>　　**– vs –**<br><br>**John Born, Sued Here in His Official**<br>**Capacity as Director of the Ohio**<br>**Department of Public Safety**<br>**1970 West Broad Street**<br>**Columbus, Ohio 43223,**<br><br>　　**and**<br><br>**Don Petit, Sued Here in His Official**<br>**Capacity as Registrar of the Ohio**<br>**Bureau of Motor Vehicles**<br>**1970 West Broad Street**<br>**Columbus, Ohio 43223**<br><br>　　　**Defendants.** | **Case No.**<br><br><br><br><br><br><br><br>**Judge**<br><br><br><br><br><br><br><br><br><br><br><br><br><br>**Complaint (42 U.S.C. §§ 1983 and 1988)**<br>**For Declaratory Judgment, Preliminary**<br>**& Permanent Injunctive Relief, Statutory**<br>**Attorney Fees and Costs** |

– INTRODUCTION –

1.      Plaintiffs are licensed professional automobile dealers in Canada who are engaged in the lawful importation and sale of pre-owned Canadian vehicles in the United States, including the State of Ohio.  The other Plaintiff is a Registered Importer licensed by the United States' government to conform pre-owned Canadian motor vehicles to comply with the laws of the United States.

2.      There exists an extensive federal scheme regulating automobile imports from Canada and other nations into the United States. That scheme, and other federal laws, provide a comprehensive system for identifying preowned Canadian vehicles by make, model and Vehicle Identification Number ("VIN") prior to their entry into the United States, and further provide that the importers of these vehicles are required to certify their present, or eventual compliance with United States federal emissions and safety standards, and to provide a bond in connection with that certification, before their entry into the United States. Importers are required to declare certain facts regarding the vehicle, including its make, model, year and VIN, to United States Customs and Border Protection ("CBP") prior to its importation, and this data is entered into a national electronic portal, the Automated Commercial Environment ("ACE"), operated by CBP.

3.      That data is automated, collected, retained, and further distributed through the operation of the International Trade Data System ("ITDS"), and is accessible to any federal agency, including the Department of Justice, which operates the National Motor Vehicle Title Information Service ("NMVTIS"), and thereby to the states, and the Defendants. In addition, prior to import, CPB ascertains, by VIN number, whether vehicles slated for import are stolen, through operation of the National Crime Information Center ("NCIC"), a database that includes stolen vehicle data and is maintained by the Federal Bureau of Investigation ("FBI"), and other databases maintained by the U.S. government and Canada.

4.     Federal regulations expressly permit the release of these imported vehicles into the stream of commerce after  thirty days after the Registered Importer's provision to the National Highway Traffic Safety Administration ("NHTSA") of the requisite declarations and bond without prior receipt of a letter from NHTSA either releasing the bond or expressly authorizing the imported vehicles be released into the stream of commerce.  Federal regulations permit the release of the imported Canadian vehicles after the expiration of the thirty day period for all purposes, including titling and sale.

5.     Defendants set the policy and practice governing the titling of motor vehicles in the State of Ohio. Through them, the State of Ohio has adopted a custom, policy, practice and use of requiring importers to submit a form created by the Registrar of the Ohio Bureau of Motor Vehicles ("BMV") before any Ohio Clerk of Court may issue a title for that vehicle. That form must, as a matter of state policy and practice, be completed by a registered Ohio auto dealer, and completed at that dealer's physical place of business in Ohio. The BMV requires the dealer or its employee to collect, in person and at that location, information regarding the vehicle, including the VIN, all of which has previously been collected by CPB and entered into and distributed through the national databases described above. A fee is assessed by the dealer and the BMV for each such form completed. Unless such information is collected, an imported vehicle cannot be issued a title, and therefore may not be sold or operated in Ohio, and thus may not enter the stream of commerce.

6.     The policy, practice, custom and usage described herein serves no legitimate state interest, collects information already collected and verified by the federal government, and imposes costly and redundant requirements on importers seeking to place preowned vehicles imported from Canada into the stream of commerce.

7.     In addition, through Defendants, the State of Ohio has adopted a custom, policy, practice and use of requiring importers to submit a letter issued by the National Highway Traffic Safety Administration ("NHTSA") releasing the bond of each imported Canadian vehicle before a Clerk of Court may issue a title for the vehicle, thereby delaying the entrance of that vehicle into the stream of commerce for a period beyond that imposed by federal law.

8.     The policies, practices, customs and usages described herein serve no legitimate state interest, are contrary to federal regulations, and serve merely to restrain competition and place an impermissible burden on interstate and foreign commerce, all in violation of Art. I, § 8, cl. 3, the Commerce Clause, of the United States Constitution.

– Parties –

9.     Plaintiff Scarsview Motors, Ltd. ("Scarsview") is and at all times relevant was a corporation organized and doing business under the laws of the Province of Ontario, Canada, with its principal place of business in Scarborough, Ontario. Scarsview is in the business, inter alia, of selling preowned vehicles, included used passager cars and trucks both in Canada and for export to the United States, and sells used motor vehicles in Ohio at Ohio wholesale auto auctions.

10.     Plaintiff Deux-Rives Chrysler Dodge Jeep Ram, Inc. ("Deux-Rives") is and at all times relevant was a corporation organized and doing business under the laws of the Province of Quebec, Canada, with its principal place of business in Sorel-Tracy, Quebec. Deus-Rives is in the business, inter alia, of selling preowned vehicles, included used passager cars and trucks both in Canada and for export to the United States, and sells used motor vehicles in Ohio at Ohio wholesale auto auctions.

11.     Plaintiff Blue Water Importers, Inc. is and at all times relevant was a corporation organized and operating under the laws of the State of Michigan with its principal place of

- 4 -

business in Burton, Michigan  Blue Water Importers is in the business of operating as a Registered Importer conforming pre-owned Canadian motor vehicles to meet federal motor vehicle safety, emissions and other standards and assisting its customers to obtain Certificates of Title for the imported Canadian motor vehicles.

12.     Defendant John Born is a natural person who is, and at all times relevant was Director of the Ohio Department of Public Safety ("ODPS"), an administrative department of the State of Ohio created by Ohio Rev. Code §121.02 (J) which is charged, pursuant to Ohio Rev. Code §5502.01 with the administration and enforcement of all laws relating to the registration, licensing, and sale of motor vehicles within the State of Ohio. He is sued here solely in his official capacity for purposes of obtaining equitable relief, attorney fees and costs of suit.

13.     Defendant Don Petit is a natural person who is, and at all times relevant was Registrar of the Ohio Bureau of Motor Vehicles ("BMV"), a bureau within the ODPS created pursuant to Ohio Rev. Code §4501.02 (A). The Registrar is empowered and charged, pursuant to that section, with administering the laws of the State of Ohio with respect to the titling of motor vehicles and is required and empowered, pursuant to Ohio Rev. Code §4501.02 (A)(1), to promulgate forms and rules relative to the duties he is charged to administer.  He is sued here solely in his official capacity for purposes of obtaining equitable relief, attorney fees and costs of suit.

14.     At all times relevant, Born and Petit, and each of them, were acting and continue to act under color and authority of state law, and their actions, with respect to each of the matters complained of herein constitute the official policy, custom, practice and use of the State of Ohio.

– JURISDICTION AND VENUE –

15.     This Court has jurisdiction over this matter pursuant to 28 U.S.C § 1331 in that it arises under the Constitution and laws of the United States and presents a question of federal

law, pursuant to 28 U.S.C §§ 1343(a)(1) and 1983, in that it seeks to protect rights, privileges and immunities secured by the Constitution and laws of the United States, pursuant to 28 U.S.C §§ 2201 and 2202, in that it seeks declaratory and preliminary and permanent injunctive relief, and pursuant to 42 U.S.C § 1988(b) in that it seeks attorney fees and costs of suit.

16.     Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C § 1391 (B)(1) in that the Defendants and each of them, maintain offices, transact business, and are required to administer the laws under their charge in all Ohio counties, including within the Northern District of Ohio, and the actions of the Defendants have adversely affected the willingness and ability of officials in all Ohio counties to issue titles to vehicles exported or imported by Plaintiffs.

### – FACTS COMMON TO ALL CLAIMS –

17.     The importation of motor vehicles, including used motor vehicles into the United States is a multi-billion-dollar business, a substantial part of which involves the importation of vehicles, including preowned vehicles, from Canada. The United States and Canadian economies are tightly entwined, and what are thought of as the major domestic manufacturers of motor vehicles in the United States operate assembly plants on both sides of the border, particularly in the Great Lakes region. Safety and vehicle emissions in both countries are substantially similar, if not identical. For these reasons, and others, the importation of Canadian vehicles into the United States is a commercial activity over which the United States government exercises comprehensive control.

18.     The North American Free Trade Agreement ("NAFTA") was implemented to promote the flow of trade goods among the participant countries, including the United States and Canada. Since the ratification of NAFTA, the flow of motor vehicles and automotive parts has increased among the participant countries. NAFTA establishes that vehicles receive preferential

tariff and tax treatment among the member countries, and among persons and businesses seeking to import and export those vehicles between NAFTA member nations.

19.    Motor vehicles made in NAFTA-participant countries for the Canadian marketplace that are later imported into the United States from Canada are entitled to cross the border duty free, as are NAFTA-country manufactured vehicles made for the United States marketplace that are exported to Canada.

20.    Because the United States Federal Motor Vehicle Safety Standards ("FMVSS") and the Canadian Motor Vehicle Safety Standards ("CMVSS") are almost identical, vehicles made for the Canadian marketplace are given preferential treatment by the National Highway Traffic Safety Administration ("NHTSA") when imported into the United States in ways that vehicles manufactured for sale in other foreign countries are not. 49 CFR §593.8 & Part 593 Appendix A.

21.    The changes required for Canadian vehicles exported to the United States are trivial and typically is limited to replacing the instrument cluster -- the feature on a motor vehicle that includes the speedometer and odometer – to reflect the change from kilometers to miles. These changes reduce the cost of exporting Canadian vehicles to the United States, which in combination with the comparative weakness of Canadian dollar relative to the United States dollar has provided financial incentives to export Canadian vehicles into the United States.

22.    Because of the nearly identical nature of the United States and Canadian motor vehicle safety standards and the ease of bringing Canadian vehicles into compliance with the FMVSS, most of the Canadian motor vehicle lines are pre-approved by NHTSA for import into the US. 49 CFR §593.8 & 49 CFR Part 593 Appendix A.

23.    Likewise, vehicles that are made for the United States marketplace are frequently purchased and readily imported, duty free, into Canada.  During the course of its useful lifecycle,

a United States or Canadian motor vehicle may be purchased, sold, imported and exported, crossing the Canadian border multiple times.

24.     The importation of motor vehicles into the United States is more heavily regulated by Congress and federal agencies than the import of many other types of consumer goods.

25.     Motor vehicles imported into the United States must meet standards imposed by numerous federal laws and regulations to be lawfully imported into the United States.

26.     These standards include compliance with or the ability to be brought into compliance with the FMVSS (including the United States bumper standards), compliance with the United States Motor Vehicle Theft Prevention Standards ("MVTPS"), the Clean Air Act ("CAA") and with Environmental Protection Agency ("EPA") emissions standards. See Statement of Purpose, 49 CFR §591.2.  Stolen, reconstructed and salvage vehicles may not be imported into the United States, and prior to its importation, each vehicle slated for import must be accompanied by a declaration attesting to its status as suitable for import. See 49 CFR §591.5.

27.     United States Customs and Border Protection ("CBP"), an agency of the Department of Homeland Security ("DHS") is charged with overseeing, inspecting, and verifying the compliance with applicable import regulations of goods that are imported into the United States, including new and used motor vehicles imported from Canada.

A.     **Theft Prevention Standards**

28.     It is a federal crime to import into the United States a stolen vehicle or to import a vehicle that has an altered vehicle identification number.  18 U.S.C. § 553.  It is a federal crime to transport a stolen motor vehicle in interstate or foreign commerce.  18 U.S.C. § 2312.  It is also a federal crime to receive, sell, or possess a motor vehicle "which has crossed a State or United States boundary after being stolen."  18 U.S.C. § 2313.

29.     CBP is required by law to seize stolen, smuggled or clandestinely imported merchandise, including stolen motor vehicles.  19 U.S.C. § 1595a (c).

30.     When a vehicle is "born", it receives a permanent vehicle identification number ("VIN"). The original manufacturer must permanently affix a label to every motor vehicle it manufacturers certifying the official name of the manufacturer, the VIN, the assembly location of the vehicle, its compliance with FMVSS, and stating the classification of the vehicle. This certification label is required to be attached to the "hinge pillar, door-latch post, or the door edge that meets the door-latch post, next to the driver's seating position, or if none of these locations is practicable, to the left side of the instrument panel."   49 C.F.R. § 567.4 (c)

31.     The VIN must also be permanently affixed in the passenger compartment, 49 CFR Part 565, and may be securely labeled or stamped onto the vehicle in other locations. The most common places are: (a) the door frame or door post of the front doors; (b) the engine block / engine frame; (c) the firewall; (d) left-hand inner wheel arch; (e) the steering wheel / steering column, and; (f) the radiator support bracket. The VIN is also stamped in as many as eighteen other locations, as well as locations that are not publicly disclosed, but known only to the manufacturer and to law enforcement.

32.     Congress has expressly preempted states from enacting motor vehicle theft prevention standards that differ from federal laws and regulations. 49 U.S.C § 33118.

33.     Congress has mandated that no vehicle may be manufactured, sold, imported, or introduced into interstate commerce that does not comply with the federal motor vehicle theft prevention standards.  49 U.S.C. § 33114.

34.     Congress has established the National Stolen Passenger Motor Vehicle Information System ("NSPMV"), a national database that contains information on the vehicle

identification numbers of stolen passenger motor vehicles and stolen passenger motor vehicle parts and is operated as part of the NCIC. 49 U.S.C § 33109.

35. Congress has also established the National Motor Vehicle Title Information System ("NMVTIS"), a database overseen by the United States Attorney General, which contains and provides information on existing and prior motor vehicle certificates of title. NMVTIS was established and is administered to prevent and deter motor vehicle theft and is designed to "assist in efforts to prevent the introduction or reintroduction of stolen motor vehicles into interstate commerce, . . ."  49 U.S.C. § 30501 et seq. NMVTIS data is available for use by law enforcement, state titling entities, and has a component for public use online.

36. States are required to participate in the NMVTIS program and to provide it with vehicle titling information, including the VIN, the description of the motor vehicle, including any branding information, as stated on its title, odometer information, and other data.  28 CFR §25.52.

### B.     Commercial Scale Vehicle Importation Standards & Procedures

37. To ensure that only vehicles that meet the US criteria for imports are imported and ultimately offered for sale in the US marketplace, Congress has established a rigorous commercial import standard for motor vehicles that includes an additional layer of protection and oversight for ultimate purchasers of imported vehicles than it has for other imported consumer goods.

38. Commercial importers of foreign motor vehicles must submit a declaration for each vehicle imported stating that it was manufactured to conform to all FMVSS; or that it was not manufactured to conform to the FMVSS, but that it is eligible to be imported because: (a) the importer has executed a contract with a Registered Importer ("RI") to import the vehicle and NHTSA has determined the vehicle to be eligible for importation; (b) the vehicle is not a salvage

or reconstructed motor vehicle; and (c) the importer has furnished a bond in an amount equal to 150% of the vehicle's value.  49 CFR §591.5.

39.     These declarations are made on Department of Transportation ("DOT") Form HS-7. Vehicles originally manufactured to comply with FMVSS are imported under "Box 2A." Vehicles imported as compliant with the Canadian CMVSS are imported under "Box 3." Box 3 vehicles are subject to significant ongoing federal oversight after import, described later.

40.     Companies engaged in commercial import activities typically engage the services of a Customs Broker in the United States.  See 19 USC §1641, 15 CFR §30.1.  These brokers are businesses licensed through the Secretary of the Treasury, that work closely with DHS and CPB, and utilize the Automated Broker Interface ("ABI") for submitting and receiving notices and electronic trade documents via the Automated Commercial Environment ("ACE"), a federally mandated electronic data exchange scheme used in the import-export process.

41.     ACE provides a single portal for federal agencies to be notified regarding imports in which those agencies are interested.  Information is shared through the International Trade Data System ("ITDS") interchange, the stated purpose of which

> is to eliminate redundant information requirements, to efficiently regulate the flow of commerce, and to effectively enforce laws and regulations relating to international trade, by establishing a single portal system, operated by the United States Customs and Border Protection, for the collection and distribution of standard electronic import and export data required by all participating Federal agencies.

19 U.S.C. § 1411 (d)(1)(B).

42.     At least twenty-four hours prior to the arrival at the Canadian-U.S. border of any rail car or truck carrying cargo to be imported into the United States, a customs broker must electronically transmit significant information to CBP, including a complete description of the cargo to be imported.  19 CFR §§123.91-.92.

- 11 -

43.    In the case of motor vehicle imports, federal agencies interested in their importation, such as NHTSA, are automatically notified of the impending importation via the ITDS. This notice and other electronic notices, inter alia, alert NHTSA when the 120 day period for finalizing compliance with the FMVSS and bumper standards begins if the imported vehicle was not originally manufactured to be compliant with FMVSS.  See 49 CFR §591.8(d)(1), 49 CFR §592.6(d)(1).

44.    Customs brokers are responsible for preparing the requisite electronic customs paperwork alerting CBP to an impending shipment and for providing all of the necessary information involving the type of cargo, amount, buyer, seller, shipper, importer, terms of sale, currency of sale, and other significant information. In the case of motor vehicles, the broker also provides the VIN and full description of the vehicle.  See 19 CFR §§123.91-.92.

45.    To import a "Box 3" (CMVSS but not FMVSS compliant) motor vehicle into the United States for resale, federal law also requires a business to engage the services of an RI. There are only seventy-six (76) RIs in the United States. None is located in Ohio. To become an RI, a business must be vetted and certified by NHTSA, pay fees, provide evidence of financial responsibility to fulfill the obligations imposed by Congress, and fulfill annual compliance obligations.  49 U.S.C. §§ 30141, 30147, 49 CFR §§ 592.5, 594.3-5.

46.    RIs have long-term obligations to NHTSA to maintain records for the motor vehicles imported through them, and specific additional obligations to the consumers who ultimately purchase those vehicles. 49 U.S.C. § 30147, 49 C.F.R. § 592.6.

47.    As a matter of law, an RI is deemed to be the manufacturer of any vehicle imported through it. 49 U.S.C. § 30166, 49 C.F.R. § 592.6. Pursuant to federal regulations "[m]anufacturer means a person – Importing motor vehicles or motor vehicle equipment for resale." The RI is required to notify purchasers of the vehicles it imports of recalls and safety

notices, at no charge to the consumer, during the life of the vehicle, and thus has an ongoing obligation to track the vehicle through the stream of commerce after importation. 49 C.F.R. § 592.6 (i).

48.     The RI contracts with the customs broker for the importation of non-FMVSS compliant motor vehicles.  Once the RI provides the broker with the necessary information, the broker prepares the cargo manifest and import paperwork required for each such vehicle. This information is sent to CBP electronically and includes the VIN and a thorough description of each vehicle being imported. When this notice is sent to CBP, NHTSA and other interested agencies are automatically alerted to the impending importation via the ITDS system. See 19 U.S.C. §1431.

49.     Once CBP receives the electronic cargo manifest, which included the VIN of each vehicle being imported, it researches the VIN, including through the NCIC database, to verify that none of the vehicles are stolen, salvaged or reconstructed.

50.     CBP treats confidentially the exact databases and sources it utilizes to ensure stolen vehicles, vehicles with altered VIN numbers, and other illegal vehicles are seized before entry into the US.  However, CBP works closely with other governments, agencies, and law enforcement to share data to ensure stolen, smuggled, and illicit goods are confiscated at the border.  *See "Written Testimony of CBP Field Operations Executive Assistant Commissioner Todd Owen for a Joint House Committee on Transportation and Infrastructure, Subcommittee on Coast Guard and Maritime Transportation and House Committee on Homeland Security, Subcommittee on Border and Maritime Security Hearing title 'Prevention of Smuggling at US Ports,'"* July 7, 2016.

51.     When the carrier with the vehicles arrives at the port of entry between the United States and Canada, the carrier will be cleared to pass the border by CBP if the advance

documentation regarding the motor vehicles to be imported has been approved, and if CBP has determined that the vehicles are appropriate for import.  The carrier, however, is not permitted to unload its vehicle cargo until it receives a permit to unlade from CPB. The vehicles must be retained at the unlading location until CBP issues a permit for delivery. CBP has the right to inspect any cargo. 19 U.S.C. §1448.

52.     Once it is satisfied that a vehicle is appropriate for importation, CBP issues a red stamped Form 7501 for that vehicle.  The Form 7501 with customs "red stamp" documents that the vehicle has been inspected by CBP, that any required import tax has been paid on the vehicle, and that it has cleared customs and is approved for release. At this point, the RI picks up the vehicle and removes it to the facility operated by the RI.

53.     When the vehicle arrives at its facility, the RI inspects the vehicle to identify the activities that must take place to bring the vehicle into conformity with the FMVSS and bumper standards.  The RI must also perform any safety or defect recalls that are open at the time of import.  49 CFR §592.6 (d)(5). Federal law requires the RI to use the VIN in all its paperwork and documentation. 49 CFR §565.24 (a). Accordingly, the RI must inspect the vehicle and ascertain the VIN assigned to it by its original manufacturer and record that information in paperwork submitted to NHTSA.

54.     The RI makes the alterations necessary to conform the vehicles to requisite federal standards.   During that process, the RI will inspect the original manufacturer's certification label and may encounter instances of the VIN in numerous other locations during the modification process.

55.     The RI must photograph the unaltered front, side, and rear of the vehicle, the alterations made to conform the vehicle to the FMVSS, the original manufacturer's certification

label, and the additional certification label the RI permanently affixes to every vehicle converted for domestic use.  49 CFR §592.6 (d).

56.      The RI sends NHTSA these photographs, as well as its certification of compliance, and any other necessary compliance documents demonstrating that the vehicle has been brought into conformity with FMVSS and certifying that there are no open recalls on the vehicle.

57.      The RI includes in this "compliance package" a bond, in an amount equal to 150% of the value of the vehicle, as surety for the vehicle's conformity. The certification the RI sends to NHTSA must specify the location of the facility where the RI brought the vehicle into conformity with United States standards and requirements, and the location at which NHTSA officials can inspect the vehicle. 49 C.F.R. § 592.6.

58.      Federal law requires an RI to withhold a Box 3 imported motor vehicle from release into the stream of commerce for thirty days after NHTSA received the compliance paperwork package, or until NHTSA issues a bond release letter expressly releasing the surety from the bonding requirement for the given vehicle. If NHTSA does not notify the RI of an intention to inspect the motor vehicle within that thirty-day period, despite NHTSA's failure to issue the bond release letter prior to that time, federal law permits the RI to release the vehicle into the stream of commerce. 49 C.F.R. §§ 591.8, 592.6. These regulations ensure that any backlog in NHTSA's paperwork processing does not unduly restrain the use, sale, or value of the motor vehicle.

**C.      Ohio Regulations and Practices**

59.      To sell any motor vehicle at an Ohio auto auction, the seller must produce a Certificate of Title for the vehicle in accordance with State law. Ohio Rev. Code §§ 4505.03, 4505.18 (A)(6) and §4517.19 (A)(4).

60.     An Ohio auto auction is prohibited from knowingly permitting the auctioning of a used motor vehicle the ownership of which is not evidenced at the time of auction by a current Certificate of Title, together with any assignments necessary to evidence the seller's ownership of the motor vehicle, without first providing clear and unequivocal notice that such evidence of ownership is not present at the sale.  Ohio Rev. Code § 4517.21 (A)(9).  Even when a vehicle is sold with the latter disclaimers, the seller is required to produce a certificate of title for the vehicle within 10 days of its sale.  Ohio Rev. Code §4517.19 (A)(4)

61.     Neither Canada nor its Provinces issue Certificates of Title for motor vehicles. Rather, the several Provinces issue ownership paperwork of a sort specific to each Province. To be able to sell a formerly Canadian vehicle at auction in Ohio, a dealer must therefore convert the Provincial ownership documents into a Certificate of Title.

62.     Ohio has no statute or regulation providing for the legal transfer of ownership of an imported Canadian motor vehicle by any means other than a Certificate of Title. Accordingly, to sell an imported Canadian motor vehicle in Ohio, the seller must first obtain a Certificate of Title.

63.     To obtain an Ohio Certificate of Title for any motor vehicle, Ohio law requires the owner or purchaser to complete an Application for Certificate of Title.  Ohio Rev. Code § 4505.06.  If the applicant is an Ohio new or used motor vehicle dealer, the cost for the title is $5.00.  If the applicant is not, the cost is $15.00. If the vehicle was most recently registered in another State, the application for title must include an additional "out of state" inspection form. This form must be executed by an Ohio dealer at a cost of $3.50 paid to the dealer and an additional $1.50 to be paid to the clerk of court or titling entity issuing the Certificate of Title.

64.     Certificates of Title are issued in Ohio counties by Clerks of Court (or in Cuyahoga County by the Fiscal Officer) but the requirements applicable to the titling process are decided upon and promulgated by the Defendants.

65.     The Defendants, through the BMV, communicate with the several clerks of court and the Cuyahoga County Fiscal Office via official publications known as Title Broadcasts, in which the position of the BMV with respect to various legal and procedural issues surrounding titling is announced.

66.     In response to queries from various Ohio county court clerks, including through the Ohio County Clerk's Association ("OCCA"), on May 1, 2015 the BMV issued Title Broadcast 15-0501, which listed the various documents the BMV required to be collected for an Ohio Certificate of Title to be issued for an imported motor vehicle, including a used Canadian motor vehicle. These documents were: (a) a bill of lading; (b) a bill of sale; (c) a Canadian Provincial or foreign registration or title; (d) CBP Form 7501; (e) an EPA Form 3520, and; (f) DOT Form HS-7. One week later, in Title Broadcast 15-0508, the BMV added two additional documents to this list: (g) an odometer statement; and (h) an out of state inspection form

67.     At this point in time, the BMV articulated no requirement that a Certificate of Title not be issued to an owner with a Canadian address, or that Ohio Certificates of Title could only be issued to an Ohio resident or a business with an Ohio location. Likewise, the BMV articulated no prohibition on accepting out of state inspection forms issued by and completed in certain other U.S. states and did not recind its Title Broadcast 15-0210 identifying those other state forms it deemed acceptable.

68.     Despite this clarification, and notwithstanding the statutory power of Defendants to establish Ohio policy regarding the issuance of Certificates of Title, various county clerks, through OCCA, continued to suggest that Certificates of Title not be issued to owners with

Canadian addresses. Among the Clerks insisting upon these changes was Bernie Quilter of Lucas County. On October 6, 2015, the BMV issued Title Broadcast 15-1006 declaring that Ohio County Clerks of Court could no longer accept out of state inspection forms issued by and completed in other states for the issuance of an Ohio Certificate of Title.  Instead, the broadcast now required all applications for title to include an Ohio issued out of state inspection form.

69.     On October 16, 2015, the Registrar, Defendant Petit, sent a draft Title Broadcast to Quilter and two other county clerks for their review and comment. The proposed broadcast imposed more restrictions on the requirements necessary to obtain an Ohio Certificate of Title for a preowned motor vehicle imported from Canada.

70.     On October 16, 2015, the Chief of the Title Division of the BMV formally issued a Title Broadcast to Ohio Clerks of Court stating that:

> A resident of Ohio or a business operating at a specific location within the State of Ohio may apply for an Ohio title for a motor vehicle imported into Ohio from Canada and other foreign countries should include all of the following documents:
>
> a.     A Bill of Sale;
>
> b.     A Canadian or foreign title or registration;
>
> c.     A CBP Form 7501;
>
> d.     A DOT Form HS-7.  If box 3 is checked on this form, the application must include the original bond release letter from NHTSA;
>
> e.     An executed odometer statement;
>
> f.     A completed Ohio out of state inspection BMV form 3706; and
>
> g.     An English translation of all documents.

The Title Broadcast further stated that the titling officer is not required to issue a title to an individual not a resident of Ohio or to any business that does not maintain a place of business in Ohio. The language of the Title Broadcast was permissive, not mandatory.

71.    No Ohio statute or administrative regulation requires that Ohio Certificates of Title be issued only to an Ohio resident or a business operating at an Ohio address. After the Title Broadcast of October 16, 2015, the Cuyahoga County Fiscal Officer continued to issue Ohio Certificates of Title to Canadian motor vehicle dealers, for vehicles imported into Ohio from Canada, using the Canadian addresses of those dealers, and did so, upon information and belief, because the language of that Title Broadcast was permissive and not mandatory.

72.    Title Broadcast 15-1016 further required that applicant for Certificates of Title submit, as a part of their applications, the original bond release letter from NHTSA for any Canadian vehicle imported into the country under "Box 3" on DOT Form HS-7.

73.    The requirement that all Box 3 Canadian vehicle title applications include the original bond release letter creates a severe hardship for the owners of these vehicles and imposes a direct burden on both interstate and foreign commerce, in direct contravention of established federal policy.

74.    It can take as long as four months from the time NHTSA receives the compliance package for a Box 3 vehicle until it issues the bond release letter, a period during which a vehicle might otherwise remain dormant after import, unable to enter the stream of interstate commerce.

75.    For this reason federal regulations expressly authorize an RI to release the Box 3 imported vehicle into the stream of commerce prior to the receipt of the bond release letter once 30 days have passed from submission of the compliance package, unless NHTSA, before that time elapses, specifically issues a notice of an intent to inspect the vehicle in question.

76.    On or about October 27, 2015, Kathy Corrigan, Acting Administrator for Office of Vehicle Services in the BMV sent notice to Dennis Kennedy, the Cuyahoga County Fiscal Officer, admonishing him that his office was improperly issuing Certificates of Title to Canadian motor vehicle dealers listing their Canadian addresses.

77. Corrigan further admonished Kennedy that, while Ohio law vouchsafed to the various county clerks the discretion to issue Certificates of Title upon their satisfaction with an applicant's documents, the most recent Title Broadcast had specifically required an Ohio address from applicants, and that failure to conform to BMV recommendations in this regard would result in adverse consequences.

78. Since Corrigan's threat, Cuyahoga County now requires all title applications for preowned Canadian vehicles imported into Ohio to be issued to an Ohio address.

79. To comply with the BMV's Ohio address requirement, Canadian dealers sought arrangements with Ohio businesses to utilize their addresses. The requirement that all applications for preowned Canadian vehicles be issued to an Ohio address has triggered numerous investigations by the Ohio Department of Taxation into the lack of payment of sales or use tax. Previously, it was apparent to the Department of Taxation when titles were issued in the name and address of a Canadian dealer that the dealer was merely converting the ownership paperwork into U.S. acceptable ownership documents, i.e. a certificate of title, and that no sale occured and, therefore, no tax was due upon the title transaction. Once the BMV began demanding that all titles be issued to an Ohio address, it was no longer apparent to the Department of Taxation that a zero taxable event had occurred. Department of Taxation now routinely investigates, demands paperwork, and issues Ohio tax due assessments to Canadian dealers who merely sought to convert their Canadian ownership into an Ohio title. This has dramatically increased the transaction cost per vehicle for Canadian dealers and they are spending time and money responding to Ohio Department of Taxation information requests and fighting improperly assessed sales tax, interest and penalties.

80. The Title Broadcast 15-1016 also required each title application for imported vehicles to include an executed Ohio out-of-state inspection form, BMV Form 3706.

81.     Since 1965, Ohio law has required the completion of an "out of state" inspection form in connection with an application for an Ohio Certificate of Title for a vehicle previously registered in another U.S. state, to help identify stolen motor vehicles brought into Ohio from other states. Ohio Rev. Code § 4505.061.

82.     On July 5, 2016, the Chief of the Title Division for the BMV issued Title Broadcast 16-0705, which announced that, effective immediately, BMV Form 3706 was no longer to be used by Ohio dealers and was replaced by BMV Form 4334, the use of which became mandatory beginning that morning, notwithstanding the fact that the Title Broadcast announcing it was not distributed until late that afternoon.

83.     BMV Form 4334 contains instructions for its completion, including specifying the location where it must be completed, and by whom, and requires all vehicles previously registered in another state to be physically trucked to the physical location of an inspecting Ohio licensed automobile dealer, in Ohio, where the vehicle must be inspected by an employee of the dealer, who completes and executes the form.

84.     BMV Form 4334 collects only limited information about the vehicle inspected, specifically the make, model, body type, VIN, and odometer mileage, and specifies on the form that the mileage is not to be used for titling purposes. In short, Form 4334 collects no information about imported vehicles that has not already been collected on customs declarations and otherwise during the federally mandated import process, placed on federal databases, and distributed to law enforcement agencies via those databases, and to consumers via commercial vehicle history companies like CarFax and AutoCheck

85.     On or about July 26, 2016, Deux Rives submitted an application for issuance of an Ohio Certificate of Title to the Cuyahoga County Fiscal Office, Auto Title Division, which

rejected the application, as it did not include a BMV Form 4334 out of state inspection form. The application also did not include an original bond release letter for the motor vehicle.

86. On or about July 29, 2016, Scarsview submitted an application for issuance of an Ohio Certificate of Title to the Cuyahoga County Fiscal Office, Auto Title Division, which rejected the application, as it did not include a BMV Form 4334 out of state inspection form. The application also did not include an original bond release letter for the motor vehicle.

87. Based upon these rejections, and a series of direct communications with Defendant Petit and other officials in the BMV, Defendants now require and will continue to require that a BMV Form 4334 be completed at the physical location of a licensed automobile dealer in Ohio, by an employee of that dealer, and that such a form, and a bond release letter from NHTSA must now be presented before any pre-owned motor vehicle, imported from Canada, will be issued a Certificate of Title in Ohio.

88. Without such a Certificate of Title, pre-owned motor vehicles imported into Ohio from Canada cannot be sold, at auction or otherwise, and accordingly cannot enter the stream of interstate commerce.

– COUNT ONE: COMMERCE CLAUSE –

89. Plaintiffs, and each of them, restate as if fully rewritten here each and every relevant allegation and averment set forth in Paragraphs 1 through 88 of this Complaint, above.

90. The importation of motor vehicles into the United States – including the importation of preowned motor vehicles from Canada – is subject to a substantial and comprehensive scheme of federal laws and regulations intended, inter alia, to insure that vehicles entering the United States are not stolen, are not salvage or reconstructed, and comply with federal safety and clean air standards. Toward this end various federal departments and agencies, include DHS, CBP, DOT, EPA, and the Department of Justice engage in the systematic

collection, retention and distribution of vehicle information, including make, model, body type, VIN and other information, and make that information available to the states.

91.     The system of data collection, customs enforcement and vetting described herein has been adopted by Congress and the various agencies involved, in part, for the express purpose of streamlining and facilitating efficient international trade and foreign commerce, and to eliminate redundant information requirements that would serve as an impediment to that goal. Congress, and the various agencies empowered to adopt and charged with adopting the federal regulations and requirements described herein, have occupied the realm of determining what information must be collected, retained, distributed and verified, and how that information must be gathered and disseminated, before a motor vehicle imported from Canada may enter both the United States and thereafter enter the stream of interstate commerce.

92.     The Ohio requirements described herein, including the requirements that no Ohio Certificate of Title will be issued with respect any pre-owned Canadian vehicle imported into Ohio without (a) the on-site completion, by an Ohio automobile dealer or its employee, of an Ohio BMV Form 4334 and (b) the presentation of a bond-release letter by NHTSA, impose significant and additional burdens on both interstate and foreign commerce that are not present in the existing federal scheme regulating the importation of motor vehicles into the United States.

93.     The Ohio regulations at issue are not a sale or use tax, and obtaining a Certificate of Title for a preowned Canadian vehicle imported into Ohio is not a taxable event, or is a zero-collectible tax event. Having the title reflect the Canadian dealer's address also assists the Ohio Department of Taxation to verify the status of the redesignation of the ownership documents from a Canadian document to an Ohio title is a non-tax collectable event.

94.     The Ohio regulations impose a significant burden upon interstate and foreign commerce. Upon information and belief, more than one thousand vehicles per week were imported into Ohio from Canada prior to the adoption of the requirements Complained of herein.

95.     Requiring importers to have their vehicles trucked to the physical location of an Ohio licensed automobile dealer, and physically inspected at that location, as a precondition of obtaining a BMV Form 4334 adds significant additional expenses for transit, time and manpower to the cost of every preowned vehicle imported from Canada.

96.     Requiring importers to obtain a bond release letter from NHTSA before and as a precondition of obtaining an Ohio Certificate of Title, and by extension before a preowned vehicle imported into Ohio from Canada may be sold, and thus enter the stream of interstate commerce, when federal regulations expressly permit the vehicle to be released into the stream of interstate commerce without a bond release letter after the expiration of thirty days, imposes severe additional burden upon importers, by requiring them to hold their stock-in-trade for months between its importation and its sale.

97.     Preowned vehicles depreciate with time, and any delay in sale reduces the resale value of the vehicle, as well as creates a need for physical storage, security and safekeeping far beyond what exists when vehicles can be resold promptly.

98.     In addition, the timing of imports to coincide with favorable fluctuation in exchange rates between the U.S. and Canadian Dollars, which is a source of additional potential profit for importers, is undermined by requiring importers to hold their stock before sale for months after importation. Used auto dealers, used auto importers, and used auto auctioneers make their profits by turning their stock quickly and efficiently, and moving imported used vehicles into the stream of interstate commerce expeditiously after import.

99.     Plaintiffs Scarsview and Deux-Rives have suffered and, absent relief from this Court, will continue to suffer increased costs and lost profits as a result of the policies, procedure and requirements adopted by the Defendants and complained of herein. As of this filing, both have decreased importing used cars into Ohio, a once profitable business for them.

100.     Plaintiff Blue Water Importers has also suffered, and in the absence of declaratory and injunctive relief from this Court will continue to suffer increased costs and lost profits as a result of the policies, procedure and requirements adopted by the Defendants and complained of herein.  Defendants' policies and practices have negatively impacted Blue Water by discouraging dealers from importing pre-owned Canadian vehicles for sale in Ohio, a nearby and significant marketplace for wholesale transactions.  Costs associated with obtaining Ohio Certificates of Title have materially increased and Blue Water's business is being adversely affected by being unable to timely assist customers to secure an Ohio Certificate of Title enabling them to sell their vehicles at Ohio auto auctions.

101.     On its face, the requirement that preowned Canadian vehicles may not be issued an Ohio Certificate of Title, and thus may not be sold and thereby released into the stream of interstate commerce without a bond release letter, discriminates against vehicles imported from Canada for resale in Ohio, and the requirement does not apply to vehicles from other states, nor vehicles sold solely among and between parties in Ohio, and burdens both foreign commerce (at importation) and interstate commerce (upon resale) in violation of the Commerce Clause, U.S. Const. Art. I, § 8, cl. 3.

102.     This requirement adopts restrictions on placing such vehicles into the stream of commerce that are in excess of and contrary to federal regulations which directly govern whether and when an imported vehicle may enter the stream of interstate commerce relative to the

issuance of the bond release letter, and are thus directly preempted by federal regulations, and were accordingly adopted in violation of the Commerce Clause, U.S. Const. Art. I, § 8, cl. 3.

103.    In addition, because Congress has directly regulated, and delegated to various federal agencies the power to regulate the import of preowned vehicles from Canada and elsewhere, and has specified the manner in which these vehicles are to be vetted as to their not being stolen, reconstructed or salvaged, and with regard to their compliance with safety and environmental standards, Ohio is precluded from regulating in this area by the negative, or "dormant" Commerce Clause as well.

104.    The requirements that preowned vehicles imported from Canada not be issued Ohio Certificates of Title without a bond release letter, and without a BMV Form 4334 completed at and by a licensed Ohio automobile dealer, serves no legitimate state interest, in that it collects no information regarding those vehicles that has not already been collected and distributed by the federal government upon their being cleared for importation, in no way ensures post-import compliance with their being conformed to domestic safety and environmental standards, and does not augment the consumer protections regarding recall and safety standards that are protected by the RI being designated the manufacturer, after import, as a matter of federal law.

105.    The sole purpose of the Ohio restrictions complained of herein is to afford a competitive advantage to licensed Ohio automotive dealers – as compared to Canadian dealers and importers of Canadian vehicles – by requiring those importers to pay fees to those Ohio dealers for the inspections required by BMV Form 4334, and by imposing additional costs, in shipment, transport, manpower and depreciation, upon the Canadian dealers and their importers, costs which are not borne by Ohio dealers, and which thus raise the cost of, and erode the competitive advantage of preowned vehicles imported from Canada.

106.     The effect of the Ohio regulations complained of herein, intentional or not, is to create an advantageous business posture for Ohio automobile dealers over Canadian dealers and importers, that eliminates the competitive advantages they enjoy, and impedes the free movement of goods in interstate and foreign commerce, all in violation of the Commerce Clause.

107.     Moreover, to the extent that any legitimate state interest is served by the Ohio restrictions and regulations complained of herein, that purpose does not justify the burden imposed by those regulations on interstate commerce.

108.     Freedom from unconstitutional state legislation and regulation that violates the Commerce Clause is a right and privilege secured by the Constitution of the United States, and the Plaintiffs, and each of them, are entitled to a declaration of their rights pursuant to 42 U.S.C § 1983 and 28 U.S.C § 2201.

– COUNT TWO: FOREIGN COMMERCE CLAUSE –

109.     Plaintiffs, and each of them, restate as if fully rewritten here each and every relevant allegation and averment set forth in Paragraphs 1 through 108 of this Complaint, above.

110.     A detailed and comprehensive nationwide system for collecting, retaining, vetting and distributing information regarding foreign imported vehicles, including preowned vehicles from Canada, to ensure that those vehicles are not stolen, and are compliant with, or will be conformed to domestic safety and environmental standards, and that consumers will be appraised of and protected against recalls has been established by Congress with and through various federal agencies. The collection of data otherwise collected on BMV Form 4334, and the provision, holding and release of import bonds, are integral parts of that system.

111.     By imposing requirements not imposed by, and in excess of those required by Congress and the various federal agencies involved, the Ohio restrictions and regulations complained of herein create additional, inconsistent and burdensome requirements that

undermine a uniform federal scheme governing the importation of automobiles into the United States, and thereby intrudes upon the sole right and prerogative of the United States to govern trade with foreign nations.

112.    As such, the Ohio restrictions and regulations complained of herein violate the foreign Commerce Clause, and the negative or "Dormant" Foreign Commerce Clause, U.S. Const. Art. I, §8, cl. 3.

113.    Freedom from unconstitutional state legislation and regulation that violates the Foreign Commerce Clause is a right and privilege secured by the Constitution of the United States, and the Plaintiffs, and each of them, are entitled to a declaration of their rights pursuant to 42 U.S.C § 1983 and 28 U.S.C § 2201.

– COUNT THREE:  INJUNCTIVE RELIEF –

114.    Plaintiffs, and each of them, restate as if fully rewritten here each and every relevant allegation and averment set forth in Paragraphs 1 through 112 of this Complaint, above.

115.    As a result of the unconstitutional actions of the Defendants, the Plaintiff have lost, and absent declaratory and injunctive relief from this Court will continue to lose significant sums and profits, conservatively estimated to exceed One Million Dollars ($1,000,000.00) annually, because of the additional costs, overhead and delay imposed upon the importation, auction and resale of preowned motor vehicles from Canada into Ohio.

116.    Because the Defendants are state actors, and any judgment rendered to satisfy the losses caused by their actions would come from the state treasury, and because the State of Ohio enjoys sovereign immunity from such judgments under the Eleventh Amendment, the Plaintiffs have no ability to collect damages with respect to the economic losses they have suffered and will continue to suffer, absent injunctive relief, as a result of the unconstitutional actions of the

Defendants, and thereby have suffered, and will continue to suffer harm for which they have no adequate remedy at law.

117.    The balance of equities favors injunctive relief, in that the Ohio restrictions complained of herein collect no data, and secure no benefit not already collected and secured by the federal regulations upon which they have trammeled.

118.    The public interest will be served by injunctive relief, in that the public interest is always served by requiring states to conform their conduct to the United States Constitution.

119.    The violation, by the State of Ohio, as complained of herein of the Commerce Clause, both as to interstate and foreign commerce, is patent on its face and the Plaintiffs, and each of them, are likely to prevail upon the merits of this action.

120.    Wherefore the Plaintiffs, and each of them, is entitled to preliminary, and after a hearing permanent injunctive relief enjoining the Defendants from persisting in the policies, practices, customs and usages complained of herein.

## – PRAYER –

**WHEREFORE,** having fully stated their claims against them, Plaintiffs, and each of them, hereby demand judgment in their favor against the Defendants, and each of them, as follows:

A.    Upon Counts I and II of this Complaint, a declaration that the policy, practice, custom and usage of refusing to issue Ohio Certificates of Title to preowned motor vehicles imported from Canada, unless and until (a) those vehicles are inspected by an employee of, and at the location of, a licensed Ohio automobile dealer, (b) provided with a bond release letter by NHTSA, (c) and titled to an address in Ohio, violates both the interstate and foreign Commerce Clause, U.S. Const. Art. I, §8, cl. 3;

B.    Upon all Counts of this Complaint, after a hearing, preliminary and permanent injunctive relief, prohibiting the Defendants and those acting for, with or in active concert with them, after notice, from continuing in the policy, practice, custom or usage of refusing to issue Ohio Certificates of Title to preowned motor vehicles imported from Canada, unless and until (a) those vehicles are inspected by an employee of, and at the location of, a licensed Ohio automobile dealer, (b) provided with a bond release letter by NHTSA, (c) and titled to an address in Ohio;

C.  Pursuant to 42 U.S.C § 1988(b) and Civil Rule 54(d), an Order awarding the Plaintiffs their reasonable attorney fees and costs of suit, and;

D.  Such other relief, be it legal or equitable, as the Court may, in the sound exercise of its discretion, deem just.

Respectfully submitted,

/s/ Raymond V. Vasvari

Raymond V. Vasvari, Jr.  (0055538)
  vasvari@vasvarilaw.com
K. Ann Zimmerman  (0059486)
  zimmerman@vasvarilaw.com
VASVARI & ZIMMERMAN
1100 Erieview Tower
1301 East Ninth Street
Cleveland, OH  44114-1844
Telephone (216) 458-5880
Telecopier (216) 928-0016

/s/ Erica L. Eversman

Erica L. Eversman  (0061909)
EVERSMAN LAW, LLC
846 N. Cleveland-Massilon Road
Akron, Ohio  44333-2181
(330) 668-9747
f (330) 668-2627
eeversman@roadrunner.com

Peter D. Traska (0079036)
TRASKA LAW FIRM, LLC
4352 Pearl Road, Suite A
Cleveland, Ohio  44109
(216) 661-2644
f (216) 342-7078
ptraska@traskalawfirm.com

Counsel for Plaintiffs